UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| Manchester Memorial Hospital, *et al.*,<br>    *Plaintiffs*,<br><br>        *v.*<br><br>Kathleen Sebelius, Secretary of the United States Department of Health and Human Services,<br>    *Defendant*. | Civil No. 3:10cv1853 (JBA)<br><br><br><br>March 29, 2012 |

RULING ON MOTIONS FOR SUMMARY JUDGMENT

On November 29, 2010, Plaintiffs Manchester Memorial Hospital, Rockville General Hospital, Lawrence & Memorial Hospital, St. Francis Hospital & Medical Center, The Charlotte Hungerford Hospital, Waterbury Hospital, Bridgeport Hospital, Greenwich Hospital, Yale New Haven Hospital, Hartford Hospital, and Norwalk Hospital filed a Complaint against Defendant Secretary of the United States Department of Health and Human Services Kathleen Sebelius (the "Secretary"), alleging that the Secretary violated Section 4410 of the Balanced Budget Act of 1997, Pub. L. No. 105–33, § 4410, 111 Stat. 251 (1997), by applying the budget neutrality adjustment to the wage indices for hospitals under the Medicare statute on a state–by–state rather than nationwide basis. On July 5, 2011, Plaintiffs moved [Doc. # 31] for summary judgment in their favor that the Secretary violated the clear language of the Medicare statute. On July 8, 2011, the Secretary cross–moved [Doc. # 34] for summary judgment in her favor on Plaintiffs' claims. For the reasons that follow, Plaintiffs' motion will be denied and the Secretary's motion will be granted.

I.   Background

Plaintiffs are eleven fully–licensed acute care hospitals located in Connecticut. (Pls.' Loc. R. 56(a)1 Stmt. [Doc. # 32] ¶¶ 1–11; Def.'s Loc. R. 56(a)2 Stmt. ¶¶ 1–11.)

The Medicare program, established by Title XVIII of the Social Security Act and administered by the Centers for Medicare and Medicaid Services on behalf of the Secretary, provides for payment to hospitals for care rendered to covered individuals. *See* 42 U.S.C. § 1395 *et seq.* Hospitals are reimbursed for inpatient services under the Prospective Payment System ("PPS"), which provides a specified amount of compensation to the hospitals for each patient discharge based on the patient's diagnosis or Diagnosis Related Group ("DRG"). *See id.* § 1395ww(d). The prospective reimbursement rates are based on separate average "standardized amounts" per discharge for urban areas and rural areas. *Id.*; *see also* 42 C.F.R. § 412.64.

The standardized amounts payable to hospitals in rural and urban areas are readjusted to account for wage level variations in different geographic areas by identifying the proportion of the standardized amount that is attributable to wages and labor–related costs and multiplying it by the appropriate "wage index." 42 U.S.C. § 1395ww(d)(3)(E); 42 C.F.R. § 412.64(h). The wage index is calculated by comparing the average hourly wage in the market area of a particular hospital with the average hourly wage for all participating hospitals nationwide. 42 C.F.R. § 412.64(h).

Pursuant to the Balanced Budget Act of 1997 ("BBA"), where a state's rural hospitals would otherwise have a higher wage index than any urban hospital in that state, a "rural floor" is applied to the urban hospital's wage index to raise it to match that of the rural hospitals. *See* Publ. L. No. 105–33, § 4410, 111 Stat. 251 (1997). Section 4410(a) of the BBA reads:

> For purposes of section 1886(d)(3)(E) of the Social Security Act (42 U.S.C. 1395ww(d)(3)(E)) for discharges occurring on or after October 1, 1997, the area wage index applicable under such section to any hospital which is not

> located in a rural area . . . may not be less than the area wage index applicable under such section to hospitals located in rural areas in the State in which the hospital is located.

With respect to the implementation of this rural floor provision, Section 4410(b) provides that the Secretary:

> shall adjust the area wage index referred to in subsection (a) for hospitals not described in such subsection in a manner which assures that the aggregate payments made under section 1886(d) of the Social Security Act (42 U.S.C. 1395ww(d)) in a fiscal year for the operating costs of inpatient hospital services are not greater or less than those which would have been made in the year if this section did not apply.

Prior to 2009, this budget neutrality adjustment was applied in such a way that the increases in urban hospitals' wage indexes to reach the rural floor were funded by hospitals above the rural floor nationwide, i.e., to maintain budget neutrality, those non–rural floor hospital's wage indexes were lowered so that hospitals below the rural floor could have their indexes raised.  *See* 73 Fed. Reg. 23,528, 23,620 (Apr. 30, 2008).  On April 30, 2008, the Secretary issued a Notice of Proposed Rulemaking ("NPRM") describing an intent to change this nationwide approach to a state–by–state approach in which the rural floor in each particular state would be funded by hospitals in that state rather than nationwide:

> [A]t a State–by–State level, the rural floor is creating a benefit for a minority of States that is then funded by a majority of States, including States that are overwhelmingly rural in character. The intent behind the rural floor seems to have been to address anomalous occurrences where certain urban areas in a State have unusually depressed wages when compared to the State's rural areas. However, because these comparisons occur at the State level, we believe it also would be sound policy to make the budget neutrality adjustment specific to the State, redistributing payments among hospitals within the State, rather than adjusting payments to hospitals in other States.
> . . .

3

> [W]e are proposing to apply a State level rural floor budget neutrality adjustment to the wage index beginning in FY 2009. States that have no hospitals receiving a rural floor wage index would no longer have a negative budget neutrality adjustment applied to their wage indices. Conversely, hospitals in States with hospitals receiving a rural floor would have their wage indices downwardly adjusted to achieve budget neutrality within the State. All hospitals within each State would, in effect, be responsible for funding the rural floor adjustment applicable within that specific State.

*Id.* at 23,622–23.

After receiving more than 1,700 pages of comments on this NPRM, including challenges from Plaintiffs (*see* R.R. 2988–4709), the Secretary published the final rule declaring that the neutrality adjustment would be applied on a state–by–state level:

> [W]e have decided to adopt our proposal for State level budget neutrality for the rural and imputed floors as final in this final rule, to be effective beginning with the FY 2009 wage index. However, in response to the public's concerns and taking into account the potentially drastic payment cuts that may occur to hospitals in some States, we have decided to phase in, over a 3-year period, the transition from the national budget neutrality adjustment to the State level budget neutrality adjustment. In FY 2009, hospitals will receive a blended wage index that is 20 percent of a wage index with the State level rural and imputed floor budget neutrality adjustment and 80 percent of a wage index with the national budget neutrality adjustment. In FY 2010, the blended wage index will reflect 50 percent of the State level adjustment and 50 percent of the national adjustment. In FY 2011, the adjustment will be completely transitioned to the State level methodology.

73 Fed. Reg. 48,434, 48,574 (Aug. 19, 2008).

On March 23, 2010, Congress enacted the Patient Protection and Affordable Care Act ("PPACA"), which directed the Secretary to return to applying Section 4410(b)'s budget neutrality adjustment on a nationwide basis:

> In the case of discharges occurring on or after October 1, 2010, for purposes of applying section 4410 of the Balanced Budget Act of 1997 (42 U.S.C. 1395ww note) and paragraph (h)(4) of section 412.64 of title 42, Code of

4

> Federal Regulations, the Secretary of Health and Human Services shall administer subsection (b) of such section 4410 and paragraph (e) of such section 412.64 in the same manner as the Secretary administered such subsection (b) and paragraph (e) for discharges occurring during fiscal year 2008 (through a uniform, national adjustment to the area wage index).

Pub. L. 111–148, § 3141, 124 Stat. 119 (2010).

II.   Discussion[1]

    A.   Waiver

The Secretary argues that Plaintiffs' claims are barred as a matter of law because Plaintiffs failed to submit a comment objecting to the Secretary's proposal during the FY 2008 rulemaking process to apply the budget neutrality adjustment to all hospitals' wage indices. In their response to the Secretary's "failure to comment" argument, Plaintiffs clarify that they "are not challenging the FY 2008 Rule" but are instead only challenging the Secretary's decision "as set forth in the FY 2009 Rule, to apply the budget neutrality adjustment on a statewide, rather than a nationwide basis." (Pls.' Opp'n [Doc. # 37] at 12.) As further clarified at oral argument, Plaintiffs' claim takes aim at a particular effect of the FY 2009 Rule change: because the Secretary adjusted wage indices on a state–by–state instead of nationwide basis following the 2009 change, there were urban hospitals above the rural rate in some states whose rates were not adjusted (because there were no

---

[1] "Summary judgment is appropriate where, construing all evidence in the light most favorable to the non-moving party," *Pabon v. Wright*, 459 F.3d 241, 247 (2d Cir. 2006), "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law," Fed. R. Civ. P. 56(c)(2). An issue of fact is "material" if it "might affect the outcome of the suit under the governing law," and is "genuine" if "a reasonable jury could return a verdict for the nonmoving party" based on it. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Unsupported allegations do not create a material issue of fact." *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000).

below–rural–floor hospitals in those states) in contravention of Section 4410(b)'s directive that the Secretary "shall adjust the area wage index" for those hospitals.[2] Plaintiffs claim that with the new statewide, rather than nationwide, adjustments, hospitals in states that have no hospitals receiving a rural floor wage index did not receive a negative budget neutrality adjustment, whereas hospitals in states that do have hospitals receiving a rural floor wage index are required to shoulder a higher burden to achieve budget neutrality within the state. (*See* Compl. ¶ 46; Pls.' Mem. Supp. [Doc. # 31–1] at 16–18.)  It is the "carve–out," which exempts some urban hospitals above the rural floor from a wage index adjustment, that they argue violates Section 4410(b)'s command that the Secretary "shall adjust" their wage index.

Although the Secretary argues that Plaintiffs failed to submit any comment during the FY 2008 rulemaking process, she agrees that she did receive comments from Plaintiffs and others during the FY 2009 rulemaking process addressing "her decision to apply the budget neutrality adjustment on a statewide, rather than nationwide basis."  (Def.'s Reply [Doc. # 40] at 2–3.)  The Secretary's evolving argument with respect to the comments received during the FY 2009 rulemaking, reflecting Plaintiffs' clarification that what they are specifically challenging is that state–by–state application of Section 4410(b) violates the requirement that the Secretary "shall adjust" the wage indices of urban hospitals above the rural floor, is that although the Secretary received comments on the statewide application,

---

[2] Plaintiffs argue in their memorandum in support of their motion for summary judgment that "in direct contravention of the clear Congressional command of 'shall adjust' found in § 4410(b), the Secretary turned the statute on its head and immunized a broad array of urban hospitals against the budget neutrality adjustment.  According to the Secretary's own proclamation: 'States that have no hospitals receiving a rural floor wage index <u>would no longer have a negative budget neutrality adjustment applied to their wage indices</u>.'  73 Fed. Reg. 48573 (August 19, 2008) (emphasis added)."  (Mem. Supp. at 16.)

6

she did not receive any specific comments on this particular effect of the statewide application. Plaintiffs argue that the Secretary's failure to adjust the wage indices of urban hospitals in some states as a result of the 2009 Rule in violation of Section 4410(b)'s "shall adjust" is "part and parcel" of the state–by–state application to which they did object.

"Absent special circumstances, a party must initially present its comments to the agency during the rulemaking in order for the court to consider the issue." *Appalachian Power Co. v. EPA*, 251 F.3d 1026, 1036 (D.C. Cir. 2001) (internal quotations and citations omitted). "An objection must be made with sufficient specificity reasonably to alert the agency." *Id.* In a June 9, 2008 comment, Plaintiff Danbury Hospital specifically highlighted the unbalance that would negatively affect hospitals in some states, while benefitting hospitals in others:

> Applying budget neutrality on a nationwide basis minimizes the policy's impact on payments and results in the nation funding a nationwide policy. Conversely, applying budget neutrality on a statewide basis maximizes the policy's impact on the payments of a few hospitals, and results in several states funding a national policy. While the proposed statewide neutrality adjustment would affect 266 hospitals in 27 states, it would have severe adverse financial consequences for hospitals in seven states: California, Connecticut, Iowa, New Hampshire, New Jersey, North Dakota, and Vermont. Our estimate is that hospitals in these seven states will see the loss of over $150 million next year in Medicare funding.
> Since 1997 CMS has always interpreted the requirement that the "rural floor" be implemented in a budget neutral manner to mean that budget neutrality is achieved by adjusting rates for all hospitals across the nation, not just the rates for hospitals within the state where the rural floor applies.

(R.R. at 3470.) A June 13, 2008 letter from Plaintiff Yale New Haven Hospital included the objection: "Budget neutrality must remain a national policy in accordance with current practice in order to retain balance and symmetry within a complex wage index

environment." (R.R. at 4526.) Comments such as these, addressing the imbalance in the neutrality adjustments that would be created by a state–by–state approach and the unfair burden that some hospitals would have to bear to the benefit of other hospitals, raise Plaintiffs' objection with sufficient specificity to reasonably alert the Secretary. That some hospitals would not have their wage indices adjusted, while others would be disproportionately impacted by the adjustment is a part of what Plaintiffs objected to, and they therefore have not waived their claims that the Secretary improperly failed to adjust the wage indices for some urban hospitals under the 2009 Rule.

  B.  State–by–State Adjustment and the BBA

Plaintiffs argue that they are entitled to summary judgment in their favor because the Secretary's policy change to a state–by–state neutrality adjustment is prohibited by the plain language of the BBA,[3] or in the alternative that the statute is ambiguous, the PPACA shows that the Congress intended the budget neutrality provision to be applied on a nationwide basis. Defendants argue that they are entitled to summary judgment because the BBA does not unambiguously prohibit the Secretary from applying the budget neutrality adjustment on a statewide basis, the Secretary's construction of the BBA, as embodied in the FY 2009 rule, is neither arbitrary nor capricious, and the PPACA cannot, by its express terms, be applied retroactively to the Secretary's application of the neutrality adjustment prior to October 1, 2010.

---

[3] Plaintiffs also argue in their opening brief that the legislative history of the BBA shows that Congress clearly intended a nationwide adjustment, but in their opposition to the Secretary's cross–motion for summary judgment they agree that the legislative history that they rely on in making this argument "did not concern the budget neutrality adjustment and the rural floor" and they concede this argument (Pls.' Opp'n at 6 n.2).

The Court employs a two–step process in reviewing the Secretary's interpretation of the BBA: 1) if "Congress has directly spoken to the precise question at issue . . . [and] the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress"; 2) if "Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842–43 (1984). If the Court finds that the statute is not unambiguous and adopts the second step, "unless [the Court finds] the Secretary's construction of the statute to be 'arbitrary, capricious, or manifestly contrary to the statute' . . . [it] must yield to that construction of the statute even if [it] would reach a different conclusion of [its] own accord." *G & T Terminal Packaging Co. v. USDA*, 468 F.3d 86, 95 (quoting *Chevron*, 467 U.S. at 844).

### i.    *Language of the BBA*

Plaintiffs argue that the language of Section 4410 is clear in that it unambiguously requires the Secretary to adjust the wage indices of the urban hospitals above the rural floor in making the neutrality adjustment. According to Plaintiffs, by performing this adjustment on a statewide rather than nationwide basis, the Secretary failed to apply the budget neutrality adjustment to urban hospitals in some states. The Secretary responds that the language of Section 4410 does not unambiguously mandate the application of Section

9

4410(b)'s budget neutrality adjustment on a uniform nationwide basis. (Def.'s Opp'n at 23–24.)

Nothing in Section 4410 of the BBA speaks directly to a nationwide application of the budget neutrality measures. Section 4410(b) provides that the Secretary:

> shall adjust the area wage index referred to in subsection (a) for hospitals not described in such subsection in a manner which assures that the aggregate payments made under section 1886(d) of the Social Security Act (42 U.S.C. 1395ww(d)) in a fiscal year for the operating costs of inpatient hospital services are not greater or less than those which would have been made in the year if this section did not apply.

The plain text does not unambiguously direct the Secretary to adjust the wage indices of hospitals nationwide in order to ensure that aggregate payments do not exceed those that would have been made if the section did not apply rather than adjusting the wage indices of hospitals in each individual state.

Neither does the plain text of Section 4410(b) unambiguously direct the Secretary that she "must" adjust the area wage index for all hospitals nationwide not described in 4410(a). The language of the Section directs the Secretary to adjust the wage indices for those hospitals not described in 4410(a) "in a manner which assures that the aggregate payments made under section 1886(d) of the Social Security Act . . . in a fiscal year for the operating costs of inpatient hospital services are not greater or less than those which would have been made in the year if this section did not apply." This Section unambiguously mandates that the Secretary preserve budget neutrality by adjusting wage indices for hospitals not described in Section 4410(a), but does not unambiguously state that the Secretary must ensure that all such hospitals across the entire country have their wage indices so adjusted.

### *ii.   The Secretary's construction of the statute*

With respect to the second step of the *Chevron* analysis, an agency's interpretation of a statute is not arbitrary or capricious if "[i]t is logically consistent with the language of the regulation and it serves a permissible regulatory function." *Rollins Envtl. Servs., Inc. v. EPA*, 937 F.2d 649, 652 (D.C. Cir. 1991).  In the NPRM for the 2009 Rule, the Secretary explained that she sought to alter the budget neutrality adjustment to a state–by–state calculation, because the rural floor had been "creating a benefit for a minority of States that is then funded by a majority of States, including States that are overwhelmingly rural in character." 73 Fed. Reg. at 23,622.  She further explained that "[t]he intent behind the rural floor seems to have been to address anomalous occurrences where certain urban areas in a State have unusually depressed wages when compared to the State's rural areas," and because these discrepancies "occur at the State level, we believe it also would be sound policy to make the budget neutrality adjustment specific to the State, redistributing payments among hospitals within the State, rather than adjusting payments to hospitals in other States." *Id.* at 23,622–23.  After notice and comment, the Secretary reiterated this explanation in the final rulemaking.  73 Fed. Reg. at 48,752.

The Secretary's reasoning reflects an interpretation of BBA Section 4410(b) that is consistent with the language of the BBA and serves a permissible regulatory function.  She rationally considered the purpose of the rural floor and the neutrality adjustments and decided that the goals of the regulation would be best served by resolving discrepancies between the rural hospitals and the "depressed wages" at urban hospitals in each individual state rather than on a nationwide basis.  This interpretation is neither arbitrary, nor capricious, nor manifestly contrary to the goals of Medicare or the BBA.  The Secretary

therefore did not violate the BBA by applying the neutrality adjustment on a state–by–state rather than nationwide basis.

        *iii.*    *PPACA*

Plaintiffs argue that the PPACA clarifies that Congress originally intended BBA Section 4410(b) to apply on a nationwide basis rather than a statewide basis. This argument ignores the plain language of the PPACA. By its own terms, the PPACA provides that the Secretary shall administer Section 4410(b) "through a uniform, national adjustment to the area wage index" for "discharges occurring on or after October 1, 2010." Pub. L. 111–148, § 3141. Nothing in the PPACA states that it is to apply retroactively or that it is a clarification of Section 4410(b), instead it simply instructs the Secretary how to conduct the neutrality adjustment moving forward.

III.    Conclusion

For the reasons stated above, Plaintiffs' motion [Doc. # 31] for summary judgment is DENIED and the Secretary's motion [Doc. # 34] for summary judgment is GRANTED. The Clerk is directed to close this case.

                                          IT IS SO ORDERED.

                                    /s/
                                Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 29th day of March, 2012.